IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **DENISE TAYLOR, and All Those Similarly Situated,** ) ) ) | CASE NO. 8:07CV493 |
| Plaintiff, ) ) ) | |
| v. ) ) ) | MEMORANDUM AND ORDER |
| **AMERICAN FAMILY INSURANCE GROUP, and AMERICAN FAMILY MUTUAL INSURANCE COMPANY,** ) ) ) ) ) | |
| Defendants. ) | |

This matter is before the Court on the Defendants' Motion to Dismiss Amended Complaint (Filing No. 18). The Defendants have moved to dismiss the Plaintiff's action against them pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 23. For the reasons set forth below, the Defendants' motion will be granted.

### STANDARD OF REVIEW

A motion under Fed. R. Civ. P. 12(b)(1) challenges the existence of the Court's subject matter jurisdiction. As the party asserting jurisdiction, Plaintiff Denise Taylor ("Taylor") has the burden of proving that jurisdiction is proper. *Green Acres Ent., Inc. v. U.S.*, 418 F.3d 852, 856 (8th Cir. 2005), citing *VS Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

A motion under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the factual allegations in the Amended Complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . .

. . " *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

Fed. R. Civ. P. 23 concerns class actions and prerequisites for the certification of such actions. For reasons discussed below, the Court finds the Motion to Dismiss under Rule 23 to be both premature and moot, negating any need for a discussion of the standard of review under Rule 23.

**FACTS**

For purposes of the pending motion to dismiss, this Court accepts as true the factual allegations in the Amended Complaint (Filing No. 17), although the Court is not bound to accept the Plaintiff's legal conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1965.

Taylor is an African-American resident of Omaha, Nebraska. (Amended Complaint ¶¶ 7, 39). The Defendants, American Family Mutual Insurance Group and American Family Insurance Company (collectively "American Family"), write insurance in 18 states including Nebraska. (*Id.* ¶ 9). Taylor has held a homeowner's insurance policy through American Family since 1989. (*Id.* ¶ 39). On August 8, 2007, Taylor received a notice that her homeowner's insurance policy premium would be affected by American Family's newly adopted policy of using an insured's credit history to set policy prices. (*Id.* ¶ 40). Taylor then received a letter from American Family on October 1, 2007, informing her that her

annual premium would increase from $1,050 to $1,608, an increase of approximately 53%.[1] (*Id.* ¶ 41). American Family responded to Taylor's subsequent inquiry regarding the premium increase with an October 25, 2007, letter stating that, "due to switching to credit based insurance scoring your premium has seen a significant increase in premium." (*Id.* ¶ 42).

Taylor alleges that American Family has discriminated against her and potential class members on the basis of race in violation of 42 U.S.C. § 1981; 42 U.S.C. § 1982; and 42 U.S.C. § 3604, the Fair Housing Act (FHA). Taylor alleges that American Family's use of credit information in its underwriting is a racially discriminatory practice. Taylor further contends that American Family's use of credit information has a disparate impact on non-Caucasians. Taylor seeks punitive damages in addition to declaratory, equitable, and injunctive relief against American Family. (Amended Complaint, p. 20-21)

In its Motion to Dismiss (Filing No. 18) and supporting brief (Filing No. 19) American Family argues that Taylor's claims are reverse preempted by Nebraska law, pursuant to the McCarran-Ferguson Act, 15 U.S.C. § 1012. As such, American Family contends that this Court lacks subject matter jurisdiction and further, that Taylor has failed to state a claim upon which relief can be granted. American Family also argues that to the extent Taylor's claims are based on a disparate impact theory, those claims fail to state a cause of action for which relief can be granted.

---

[1] In her Amended Complaint, Taylor incorrectly calculated a 35% increase.

**DISCUSSION**

The McCarran-Ferguson Act provides in relevant part that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The United States Supreme Court has clarified the three requirements that must be met for the McCarran-Ferguson Act to apply. *Humana v. Forsyth*, 252 U.S. 299 (1999). First, the federal law in question must not be specifically directed to insurance. Second, a particular state law or declared regulatory policy enacted for the purpose of regulating insurance must exist. Finally, the application of federal law must invalidate, impair, or supersede that state law. If all three of these requirements are met, the federal law claims are reverse preempted by state insurance law. *Id.*

Both Taylor and American Family concur that the first two requirements of the *Humana* analysis are clearly met in this case. First, the federal laws forming the basis for Taylor's claims, the Fair Housing Act and the federal civil rights laws found at 42 U.S.C. §1982 and §1982, do not specifically address the regulation of insurance. Second, Nebraska has enacted legislation regulating insurance and specifically regulating the use of credit-based insurance scoring. Neb. Rev. Stat. § 44-7701 *et seq.* (Reissue 2004). The decisive issue is the third requirement, whether allowing Taylor to proceed on her claims under federal civil rights statutes and the Fair Housing Act would invalidate, impair or supersede Nebraska's insurance laws.

In *Humana,* insurance policy beneficiaries brought suit alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) by the defendants, a group

4

health insurer and a hospital.  The plaintiffs alleged that the hospital gave the insurer substantial discounts on hospital charges that were not disclosed and passed along to beneficiaries.  As a result, the insurer paid a much smaller portion of the hospital charges than the 80% agreed to in the plaintiffs' insurance policies and the plaintiffs paid in excess of their 20% portion.  The Supreme Court held that the plaintiffs' RICO claims were not barred by the McCarran-Ferguson Act.  *Humana,* 252 U.S. at 314.  The Court's analysis turned on the interpretation of the term "impair" found in the language of the Act.

> While we reject any sort of field preemption, we also reject the polar opposite of that view, *i.e.*, that Congress intended a green light for federal regulation whenever the federal law does not collide head on with state regulation.  The dictionary definition of "impair" is "[t]o weaken, to make worse, to lessen in power, diminish, or relax or otherwise affect in an injurious manner." Black's Law Dictionary 752 (6th ed. 1990). The following formulation seems to us to capture that meaning and to construe most sensible, the text of [§1012(b)]: When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application.

*Id.* at 309-310.

Despite the clarification set out in *Humana*, courts addressing the preemptive effect of  the McCarran-Ferguson Act have continued to reach different conclusions with respect to that third requirement.  In the wake of *Humana*, the Court of Appeals for the Eighth Circuit affirmed a lower court's dismissal of RICO claims against insurers in a decision issued only months after the Supreme Court decision.  *LaBarre v. Credit Acceptance Corp.*, 175 F.3d 640 (8th Cir. 1999).  In its decision, the Eighth Circuit highlighted the difference between the administrative remedies available under Minnesota's insurance laws and the private cause of action available under RICO.  *Id.* at 643.  The court adopted language from *Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1308 (8th Cir. 1997), in holding that "the

extraordinary remedies of RICO would frustrate, and perhaps even supplant, Minnesota's carefully developed scheme of regulation." *Id.* at 643. *See also Wineinger v. United Healthcare Ins. Co.*, 2000 WL 1277629 at *8 (D. Neb. Feb. 16, 2000) (In accordance with the Eighth Circuit's opinion in *LaBarre*, the district court held that the McCarran-Ferguson Act precluded a RICO claim in the absence of a private cause of action under the relevant Nebraska state law.)

Taylor's complaint contains allegations that American Family violated federal civil rights laws, 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act, 42 U.S.C. § 3604, by its use of credit information in assessing risk and setting homeowners' insurance premiums. American Family contends that Taylor's federal law claims are reverse preempted by Nebraska law, pursuant to the McCarran-Ferguson Act.

Nebraska's Model Act Regarding Use of Credit Information in Personal Insurance regulates the use of credit information for personal insurance, including homeowners insurance. Neb. Rev. Stat. §§ 44-7701 *et seq.* (Reissue 2004). While specifically authorizing the use of credit information by insurers, the Act purports to afford consumers "certain protections" with respect to the use of that information. § 44-7702. Among those protections is the proscription against the use of "insurance score[s][2] . . . calculated using income, gender, address, zip code, ethnic group, religion, marital status, or nationality of the consumer as a factor." § 44-7705. The Act further requires insurers that use credit-based insurance scores when underwriting and rating risks to file their scoring models or other

---

[2] An insurance score is defined as "a number or rating that is derived from an algorithm, computer application, model, or other process that is based in whole or in part on credit information for the purposes of predicting the future insurance loss exposure of an individual applicant or insured." § 44-7704(8)

6

scoring processes with the Department of Insurance. § 44-7709. The Act does not provide consumers with a private cause of action against insurers.

The absence of a private cause of action under the applicable state law is acknowledged by both Taylor and American Family. Where the parties differ is in the interpretation of that fact in the context of the third requirement set out by the *Humana* Court.

American Family's argument in support of reverse preemption and the dismissal of Taylor's complaint rests heavily on a decision by the District Court for the Western District of Missouri. *Saunders v. Farmers Ins. Exch.*, 515 F. Supp. 2d 1009 (W.D. Mo. 2007). Missouri law prohibited insurers from setting "unfairly discriminatory" rates and placed on insurers a comprehensive filing requirement with respect to rate plans, policies, and rules. *Id.* at 1019. The law further gave the Director of Insurance the power to enforce the law and did not allow actions by private citizens. *Id.* The court found that "the FHA and Civil Rights laws and Missouri's insurance laws provide quite different remedies" and that "plaintiffs' [federal law] claims would interfere with Missouri's administrative insurance regime." *Id.* at 1020. The court granted the defendants' motion to dismiss the plaintiffs' complaint holding that the plaintiffs' federal race discrimination claims were preempted under the McCarran-Ferguson Act. *Id.*

In her brief in opposition to American Family's Motion to Dismiss, Taylor relies on a decision from the Fifth Circuit.[3] (Filing No. 31). In *Dehoyos v. Allstate Corp.*, 345 F.3d 290

---

[3]Taylor also relies on *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992); however, that case embraced the "direct conflict" approach to the McCarran-Ferguson Act which was rejected by United State Supreme Court's in its *Humana* decision.

(5th Cir. 2003), the court held that the McCarran-Ferguson Act did not preclude the plaintiffs' federal civil rights claims against the defendant insurance companies. *Id.* at 299. In its decision, the court noted that "because [defendants] do not identify a state law or policy that would be impaired by the application of the federal statutes, it is impossible for them to prevail on the third *Humana* prong, i.e., a finding of impairment caused by the application of the federal law." *Id.* at 297. Taylor's argument rests heavily on dicta in the *Dehoyos* decision. The court opined that even if state law were enacted that differed from the approach taken by the federal statutes, "the mere fact that the two approaches are different is not sufficient to create a conflict. " *Id.* at 299. "The approach of the federal statute must tread upon a declared policy goal of the state scheme." *Id.*

The Nebraska legislature enacted the Model Act Regarding Use of Credit Information in Personal Insurance to allow and to regulate insurers' use of consumers' credit information. The state law clearly allows the use of that information by insurers to create insurance scores for the purpose of assessing risk and setting premiums. The Act creates a regulatory scheme requiring insurers that use insurance scores to file their models or processes with the Department of Insurance. The Act further prohibits the use of ethnic group or nationality in the calculation of insurance scores.

Nebraska's insurance laws do not directly conflict with federal civil rights laws prohibiting discrimination; all include a prohibition against discrimination. However, it is difficult to envision how allowing Taylor to proceed with her federal civil rights and Fair Housing Act claims would not frustrate, and perhaps supplant, the declared state policy and/or interfere with the administrative regime created under Nebraska's Model Act

8

Regarding Use of Credit Information in Personal Insurance.[4]  *See Humana*, 525 U.S. at 310.

**CONCLUSION**

Allowing Taylor to challenge American Family's credit-based insurance scoring system under federal civil rights statutes, including the Fair Housing Act, would impair the specific insurance laws of Nebraska and, therefore, Taylor's claims under those federal statutes are reverse preempted under the McCarran-Ferguson Act.  Because it does not appear that the Amended Complaint can be amended to state a claim upon which relief can be granted, it will be dismissed and judgment will be entered for the Defendants.

IT IS ORDERED:

1. Defendants' Motion to Dismiss (Filing No. 12), that preceded the filing of the Amended Complaint, is denied as moot;

2. The Defendants' Motion to Dismiss (Filing No. 18) is granted;

3. The Amended Complaint (Filing No. 17) is dismissed with prejudice; and

4. Judgment for the Defendants will be entered by separate order.

DATED this 11th day of August, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[4] Taylor contends that she is not alleging that all uses of credit information in insurance underwriting are discriminatory, but rather that American Family's specific use of credit information intentionally targets non-Caucasian consumers.  (Plaintiff's Brief at p. 3-4).  The Court sees no meaningful distinction with respect to the McCarran-Ferguson Act analysis.